When you're ready. Thank you, Your Honor. May it please the Court. My name is Aaron Ziegler, and I represent the plaintiff appellant's children, whose identities were appropriated by Facebook to be used as apparent endorsements of third-party advertisements. Could you please speak up and articulate? Sure. I'm sorry. Well, it's not yours to apologize. I'm finding increasingly that people who speak with even a mild degree of slurring sounds like incomprehensible mumbling to me. Well, I'll try to do a better job. It's not your fault, but articulation and speaking up helps me a lot. As I said, my name is Aaron Ziegler, and I represent the plaintiffs in this matter, the appellants, and they are children whose identities were misappropriated by Facebook. They were used for commercial purposes in their third-party advertisements. This right of publicity that plaintiffs seek to protect is a state-law-created intellectual property right. And you're arguing that the substantive right is under Illinois law? Yes, Your Honor, we are. Facebook justifies the invasion of this right by pointing to its terms of use, what it calls its Statement of Rights and Responsibility, or SRR, to argue that plaintiffs consented to their use of their identity in this way, but children lack the capacity to consent. The district court — To any contract? I'm sorry, Judge Beha? To any contract? Or just to this contract? Well, to this contract in particular, but to most contracts, Your Honor, the — No, actually, the California law is the opposite. They do have the right to consent, except with a few exceptions. And then they're voidable. Your Honor, I would disagree with that. The standard rule, the general rule, is that minors can't contract, except with the extent to — here, let me — the Restatement, Second of Contract, Section 12 says —  It's a statute. Are we talking California consent law? Are we talking Illinois consent law? What law are you talking about? I'm talking about California consent law, Your Honor. Okay, so don't talk to me about the Restatement. Talk to me about California law. All right. California Civil Code, Section 1556, Who May Contract? All persons are capable of contracting, except minors. Persons of unsound mind — How about if you read Section 6700? 6700? Family Code. That's the Family Code section, Your Honor? Yes, it is. It says that, except as provided in 6701, a minor may make a contract the same manner as adults subject to the power of disaffirmance. So, I mean, I'm afraid that's where I'm starting from, that says a contract may — a minor may enter into a contract subject to certain exceptions. Okay. And you don't contest the applicability of this statute? No, I do not contest the applicability of 6700. Well, I'm glad you do, because ultimately, your position is that Illinois law should govern. Ultimately, our position, Your Honor, is that the contracts avoid ab initio, and after the contracts avoid ab initio, then the court's required to do a choice of law analysis to determine what law substantively applies to the — After, I see. Okay. Because there's a choice of law provision. Right. So we can start, Your Honor, with 6700, and that's fine. It provides, like you said, that a minor may contract in the same manner as an adult subject to disaffirmance. Can I just make a comment? I'm sorry? I must say that you kind of lost, just as an advocacy point, by denying something that is clearly the case. You've completely undermined your argument. Now, why you did that, I don't know. Anyway, go ahead. Okay. So 6700 allows for the power of disaffirmance, like Your Honor said. 6701 also — well, I mean, it starts by forbidding certain types of contracts. A minor can't contract for certain things. There are three things there, real property, personal property not in your immediate possession, and then delegation of power. Right? Is this a real property? This is real property, Your Honor. This is real property? I'm sorry. I'm sorry. I misspoke. It is personal property. Is a name and likeness of a minor in the possession of a minor when he contracts? When he contracts. I don't believe it's in his immediate possession, Your Honor. His face is not in his immediate possession? I think that's something different. Someone's face and name are different than their identity. Your right to identity is an intellectual property right, essentially a copyright or patent on your own identity. Which he doesn't get until he's 18 years old? No, he has it constantly. A minor has no name until he's 18? No, Your Honor. What is your argument? My argument is that, first, the delegation of the use of one's identity is a delegation of power, contrary to 6701A. It's also contrary to 6701… But you're assuming that this is a delegation instead of a plain license. I think even a license is a delegation, so to speak. The minor doesn't delegate Facebook to go out and use his name in advertisements. He just allows it when he chooses a friend. Isn't that the way he does it? Your Honor, the minors… Is Facebook an agent for the minor? I believe they are in this instance. If you look at our complaint, Your Honor, it's discussed in paragraphs 24, 25, 26, and 27. It lays out exactly what happens with respect to these advertisements. But as I read the delegation provision of 6701 and the California case law, what is not allowed under that Subsection A that a minor cannot give a delegation of power is that the minor cannot authorize someone to act on his or her behalf, for example, to enter into contracts in the name of the minor. That's one… That is to say, designate someone as an agent to act on behalf of the minor for the minor's benefit or binding the minor to certain legal obligations and so on, which is not what went on here. Well, there are certainly a number of ways that someone can delegate power, and I agree with Your Honor that that's one way in which a party can delegate. I think that more or less exhausts delegation under this definition as under California case law. I don't think so, Your Honor, and I think that it works this way. Facebook's terms provide, you give us permission to use your name and profile picture. That accepts a record 37. People v. Howard, which is the California appellate court, defines permission as to do and act as authority. So therefore, permission is authority. The permission is okay. I'm after the word delegation. Do you have a case that supports your reading or understanding of delegation under this subsection? Delegation of power. We don't have a case that discusses delegate, but we have, of course, the dictionary definition of delegate as it was defined when the passage of the statute in 1868 and the current definition, both of which are the same for most parts. Well, there is some case law on delegation. On delegation. Apparently, you're not bringing it to me because the cases that you found don't help you very much. I'm not withholding anything, Your Honor. So if there are — But you're not — well, so my question to you is do you have any California case law that gives you the definition for which you are contending? And I think I just heard your answer is no. You're right, Your Honor. The answer is no. Your Honor, we also argue that this is an agency relationship. Well, you argue somewhat more persuasively that it's at least very close to — it has a lot of similarities to an agency relationship. It certainly does, Your Honor. I think if you look at a couple of different places in the terms of use, the one that I mentioned, you give us your permission to use your name and profile picture subject to the limits that you put in place and compare that to the definition of agency that's available in the restatement at Section 1.02. Facebook's terms are giving authority to Facebook to commercially use the plaintiff's name and likeness, and at the same time, the plaintiffs purportedly retain the ability to control that practice. And those two things create an agency, the children, the principal — a traditional common law agency is because the payments are all going to Facebook and the minor is not deriving any benefit. They're not being paid, that's for sure. But the consideration in the contract is the use of Facebook. So in some sense, you could — you could have an agency in the sense that it is future-oriented and it deals with dealings with a third party. In other words, it gives Facebook the right to deal with a third party and to do so without further going back to the individual. So it seems to have every attribute of an agency except that the benefit is there's no fiduciary relationship. Right. That's correct, Your Honor. And I don't believe that the principal being paid is a requirement for agency. A case that we cited below in our post-hearing letter cited a case where a principal designated somebody to be able to execute their checks for them to go deal with the bank. It was an elderly person who was having somebody help them with their finances. And just a simple note to the bank that said, I trust this person to handle my banking for me. Please allow them to do that was enough to establish an agency under California law. But they did it for me. That was the difference. I'm sorry? They did it for me. For me. For me. All right. This was not for me. In other words, this license, the payments and the use of these stories, whatever they were, were not for the Facebook user child. They certainly weren't benefiting from it other than their use of Facebook. That's correct. But essentially, again, we analogize this to an actor or a model who has an agent that the agent is the one who goes out and finds work for that model and sells the name and likeness to other advertisements. It's the only, if that agent were to keep all the money for himself, would there not still be an agency? I think there would be. It's the representation, not the fact that the money ever makes it way back to the principal that I think makes the difference. Besides delegation of power there and 6701C, which prohibits personal property not in the immediate possession, which we believe is more akin, these IP rights are more akin to a future interest than to a baseball card. But we also assert a claim under 6710, which allows for disaffirmance. And 6710 provides a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards. So let me ask you about the disaffirmance. Are you reading that section to allow retroactive disaffirmance? That is to say, I'm a minor. I had entered into this contract. Certain things have been done pursuant to this contract. I now disaffirm the contract. And are you saying that that voids the contract prior to or anything done under the contract prior to the disaffirmance? Your Honor, let me answer that in two pieces. First, I think the most important piece is a factual one. Plaintiffs filed their First Amendment complaint, which asked for ‑‑ which included all the plaintiffs here, on April 20, 2012. And Facebook continued to use their name and likeness through December 3, 2013. So even if disaffirmance only looks forward ‑‑ Yeah, but would you stay with the question I asked? Sure. And then we can talk about forward. Okay. I first want to understand your position and your argument with respect to retrospective application of a disaffirmance. Your Honor, the answer to that question is found in one of this Court's cases, Hurley v. South Carolina Edison Company, 183 F2D 125. And here in this Court found that disaffirmation of a minor's contract is retroactive to the very beginning. That case involved the delegation of stock. And the Court found that the signed delegation was invalid from the very beginning, and therefore there was no defense to the fact that it was paid pursuant to a delegation. I confess I did not read that case. So what's happening in that case? What's at stake in that case? In that case, there was a multiparty transaction that involved a stock purchase. Okay, so husband, wife, and I believe grandson were one of three parties to a stock transaction. There was an election that the stock payments all go to the wife. As many years passed before the minor ever found out that he was named as one of the co-owners to the stock, he disaffirmed the election that the payments go to the wife and sued to recover all of the payments of the stock over the entire period of time. The company defended the case, saying, we had this election that as far as we knew was good, so we were paying the money to the mother. The Court held, the Ninth Circuit held, that the disaffirmation of that contract was retroactive to the very beginning and all the payments made under that election were not good, and the minor could now get all of the stock payments. But it sounds as though the minor himself or herself had nodded into the contract at that earlier period, that the minor finds out about it, and as soon as the minor finds out about it, says, hey, wait a minute, that was done on my behalf, but I had no knowledge, and I didn't consent at that earlier period. Am I misunderstanding your narrative? It's not an issue of voidness, it's a disaffirmation case. And was that case decided under California law? Yes, Your Honor, under California law. That's the best case you've got for retroactive application? Yes, Your Honor, but like I said, retroactive application here doesn't matter because it was for more than 18 months that Facebook continued to use it. And you wanted to talk about future applications. Right, and that goes to the time frame. Just wait a minute. What was confirmed within 18 months? I'm sorry, Your Honor, I didn't hear you. You said it doesn't, that retroactive application doesn't matter because it was confirmed within 18 months. What was confirmed? No, it wasn't, not that it was confirmed, Your Honor, that Facebook continued to use the minor's identities for more than 18 months following disaffirmation. Well, as I understand their basic argument, it's that you can't disaffirm part of the contract. You have to disaffirm the whole contract, and they continue to be Facebook users. The minors have disaffirmed the entire contract. If you look at the statute 6710 and you look at its, how it's changed over time. But they continue to use Facebook. So that would be the consideration that they received from the contract, right, Your Honor, the ability to use Facebook? No, but in the future they continued. After the supposed disaffirmation, they continued to use Facebook. Yeah, that's right, Your Honor. The case law is clear that minors under the age of 18 have no obligation to return any consideration under the contract. But that's not returning it. This is in the future they continue to. Right. So that argument is more of akin to a, if you look at the cases on estoppel, Your Honor, they're also clear that the minors can't do anything when they're minors to stop themselves from disaffirmance. If they disaffirm, they can't do anything until after 18 in order to reform. I understand that filing a lawsuit can be a disaffirmation. It's absolutely a disaffirmation. Well, the question of what? In other words, you never said it was a disaffirmation. You never said that we are looking to void the entire contract. Your Honor. So there's no indication either from the lawsuit or from their behavior after the lawsuit that they were looking, that they were actually disaffirming the entire contract, as opposed to trying to walk away from, you know, understandably, from this particular provision. So, in other words, I don't know that filing this lawsuit was a disaffirmation of the contract. You could have, I mean, a lawsuit can be a disaffirmation of a contract, but I don't know that filing this lawsuit was a disaffirmation of the contract. Your Honor, from the very beginning, this lawsuit, in every iteration, has claimed that the terms were void ab initio. I understand the terms, but did you claim the contract was void ab initio? The entire contract. By terms, I mean the statements of rights and responsibility, the entire thing. We've claimed the whole thing is void ab initio in every single complaint. And including the right to use the thing? Yes. You never said that, as I understand it. You never said, I want to — did you ever say, I want to — I just don't want to have anything to do with Facebook, as opposed to I want to be able to use Facebook but not have these terms? We've never said we want to use Facebook. We've never said Facebook has to be able to service us. We've never said— But I gather your clients have continued to use Facebook, because otherwise you would not have these claims with respect to what happened after filing the lawsuit. Because if your clients weren't using Facebook, this wouldn't have been happening. The binders were looking for a declaration. I see that I'm out of time. A declaration that the terms were invalid as users of Facebook. And they could use Facebook on their terms, regardless what Facebook said. No, Facebook was free to revoke their access, which they did. Okay. We've taken you over time. We'll give you two minutes to rebut. Thank you, Your Honor. Let's hear from the other side. Good morning, Your Honors. May it please the Court. Daniel Levin, Margaret Tolson Olson, on behalf of Facebook. Let me start with 6701A, the delegation provision, and then I'll talk about disaffirmance in a minute. Can I say the same thing to you about mumbling? Absolutely. 6701A prohibits a delegation, and this isn't a delegation. What makes it a delegation of power is that a minor gives to someone the authority to act on their behalf and to bind them. That is quintessentially what a delegation is. It creates an agency relationship. But this is awfully close in a minute because they were giving, purportedly giving Facebook the authority to do something that they would otherwise do for themselves, i.e., give people the permission to use their identity in pictures and in advertising. And they were doing it for the future rather than on a one-shot deal, in other words, on a continuing basis. And the only respect in which they weren't doing it, they weren't having Facebook act for them, I guess, was that Facebook was going to get the money. But is that the determining factor? It's more than that, Your Honor. What's happening is the user is giving Facebook the right to republish this information, these likes, that the user, him or herself, goes out and makes. But there's an additional factor. What they were giving them was the right to contract with a third party, and that's what makes it look a lot like an agency, too. So they were giving Facebook the right to — so in other words, they weren't giving Facebook the right to just use it. They were giving the right to contract with a third party to use it. Right. They're giving — yes. Facebook can go out and make an agreement with an advertiser. But the problem — the issue is, is there any kind of relationship as between the minor on the one hand and the advertiser on the other hand? The answer is no. The minor has a relationship with Facebook. And in consideration for using the site without having to pay money for it, in consideration for that, the user gives Facebook the permission to republish the name and the profile picture. Facebook then goes out and it contracts with advertisers to sell certain ad products. And Mr. Ziegler talked about the allegations and the complaint. When you look at paragraph 27, which he mentioned, which is on page 43 of the supplemental excerpts, they allege the advertiser doesn't know. The advertiser doesn't know which minor's likes will appear. So there's no — there's no — the advertiser is not going out and saying, I want user A, user B, user C to appear in my ads. They're saying, if people like my page, I would like — and that information, by the way, is going to be published. The act of liking will be published to the user's friends, regardless of these ad products. The advertiser can say, I'd like that information redisplayed to those same friends, sometimes in connection with an advertisement provided by the advertiser. But that's not creating — there's no — Facebook isn't stepping in and acting as the agent or the representative of the minor on the one hand, vis-à-vis the advertiser. It's two — it's two steps. And that really — that makes all of the difference. It's no different from saying a minor, you know, rents his bike to someone, and that friend goes out and lends the bike to another friend. It's just — it's a two-step transaction, which is different than saying having your friend go out and be your bike broker, which is what an agency relationship would look like. So there's a distinction. And it's interesting because there is no case, and we've tried to look back through all the California cases, there is no case that takes as broad a view of this as the plaintiffs in this case. You go back to the Hakes case to 1913. The California Supreme Court said it's obvious what this statute is, what the intent of the legislature is. It's to prevent a minor from appointing an agent to make a contract on his behalf. And you just don't have that where there is no contract on behalf of the user with the advertiser. You just cannot get to the end of 6701. Let me briefly address the disaffirmance point, then. The disaffirmance — there's two issues with disaffirmance. Number one, whether they disaffirmed effectively, and number two, whether it can be retroactive. Let me start with the second one. It cannot be retroactive. And we know that from the Morgan case, which Mr. Ziegler referenced. What exactly does retroactive mean? I mean, it is — disaffirmance is, by its nature, retroactive. Right? I mean, if I say, I'm going to give you — here, I give you $50, you give me the car, and then — but I'm a minor, and so I later come back and say, you know, forget it, I'm disaffirming it, give me back the car, give me back the $50, I'll give you back the car. So, Your Honor, so I shouldn't — retroactive may not be the right word. Let me use the words that the California Court of Appeal used in Morgan. What you can't do is turn a rightful action into a wrongful one. So, what happened in Morgan — Morgan is sort of a convoluted case, but the minor is endorsing checks. And there's — part of it is the minor has given someone authority to endorse checks on his behalf, and part of it is the minor endorsed a bunch of checks on his own behalf over to the bank and got paid. He then disaffirms. He says, I'm disaffirming those endorsements. And he says, well, that makes the subsequent endorsement by Bank 1 to Bank 2 an illegal conversion, because I've disaffirmed my endorsement over to the bank, and therefore there was a — there was a tort — a conversion that happened by when Bank 1 endorsed it over to Bank 2, and I ought to get paid. But that falls into a course thought. Right. And he said — he said it's improper. You can't endorse a check that hasn't been properly endorsed over to you, and I ought to get paid. Effectively, he's trying to double-collect on the checks. He's saying I should get paid a second time. And the California — it's not the Supreme Court. The California Court of Appeal says, no, you can't do that, because at the time that the bank made that endorsement, it had — it had the minor's permission to do it because it had a validly endorsed check. You can't convert a rightful action into a wrongful one. And the Stewart case from D.C. is the same — makes the same point in a different  context. And that's what's happening in this case when they say at the time that Facebook sold a sponsored story or a social ad, it had — it had a consent in 10.1 of the S.R.R. So you can — you can disaffirm. Minors can disaffirm contracts. But what you can't do is say I disaffirmed today, and yesterday that action you took which was rightful is wrongful. So you can't go back in time that way. So that's half of it. And then this question of looking forward, that's a question of — it's undisputed they continued to use Facebook for a number of months after filing the complaint. So let me tell you two things. One, it's not — it is not unequivocal in the complaint. Here's everything the complaint says about disaffirmance as opposed to voidness under 6701. It says the S.R.R. is governed by Family Code 6702, and everyone understood that to mean 6710, and is voidable at the discretion of plaintiffs and class members. That's everything it says about disaffirmance. It then goes on to say it seeks a declaration that the contract is absolutely void. That's 6701. Kagan. When the cases say that a case can — that a lawsuit can be a disaffirmation, what do they mean? Do they mean that the lawsuit can — can say it's disaffirming and then it's okay to take it as a disaffirmation? Or are they saying that if it — if it's asking for relief, that's an essence of disaffirmation, therefore it's a disaffirmation, or what? They haven't imposed a magic words requirement, but what they — what you see in the cases, and frankly, Your Honor, they don't say a whole lot about what it means, but what you see is when the — it's when the complaint is — is totally inconsistent with the contract. So take the — the Chelly case that we said in the brief. There's — there's a release. The minor gave a release in that case, signed a release, and then — and then goes ahead and sues. And they say, well, the filing of the lawsuit can operate as a disaffirmance because they're — they're absolutely contrary to one another. But it's not — it wasn't avoidance theory. I mean, this is — the problem we have here is this, and to use your analogy, the release presumably was part of a larger settlement, or let's assume it was. And if that's the case, and if they file a lawsuit to disaff — to challenge the release, are they therefore disaffirming the entire settlement? That's what we have here. It — it's actually a little different. The Chelly case, it was — the release was on a ticket to go see a race — a race at the racetrack. Well, take my — And it's a — it's a — then they bring a negligence claim because they were injured at the racetrack. All right. But here's my — take my example, because that's the problem here. The problem here is they were — I assume you would agree that the complaint was seeking to, quote, disaffirm or — but probably couldn't do it with regard to just these provisions. But the problem is you can't do that. You have to disaffirm the entire agreement. Correct. So the question is, do we take, therefore, what they did as being as — if we're going to put words in their mouth, which apparently the California case law does, what words are we going to put in their mouth? Are we going to put the words in their mouth that says we want to get out of these conditions but not out of the ability to use Facebook? Or are we going to say we're trying to get out of the whole thing? Well, you have to get out of the whole thing. You can't disaffirm just the — I understand that. What I'm trying to find out is what California case law would do with regard to what they were seeking to negate by this agreement. Well, I think it would look at their actions. Right? And it has to. And we know what their actions were here. The first of all, is there any case law about this? There's not much, but let me — let me give you one case law that I think might be helpful. It's the one that talks about the irksome parts, the Holland case. It's a — a minor has a — has a agreement for car insurance. And there is a — he has not elected — or he's unelected to have uninsured motorist coverage. He didn't want to pay for it, so he checked a box saying, I don't want it. So then he — he comes in after being in an accident and says, well, I — I want to disaffirm that — that my election, and I'd like that uninsured motorist coverage now. And they say, well, no. Because what you're trying to do is you're trying to have the benefit of your car insurance, and you're trying to now, you know, just tack on that extra coverage. And they say, for a whole bunch of reasons, that doesn't make any sense. It would incentivize people to do all sorts of mischievous things. So — but that's effectively what we have here. They go on. They're using Facebook. And they're saying, well, I want to use Facebook. It's this great service. I get a lot of benefits. But they weren't saying that. What? His position, I gather, is we weren't saying we want to use Facebook. But they — We're saying, any time you want to throw us off Facebook, go ahead. But they — but the fact is, they are using it. And they can't then say — and, in fact, the only reason that any of these ads are appearing or anything is happening and that they — any of the conduct that they allege to be violative of the statute, the only reason it is happening is because they continue to use Facebook. So they can't both be using it, saying, as we use it, these things that we don't like are happening. But by the way, that one provision where we consent to those things, that's — we don't like that, so let's excise that. And the choice of law provision, we don't like that either, so let's excise that out. That's what they can't do, because that drives you right back into the insurance stuff. Kennedy. I'm not too familiar with the use of Facebook. But couldn't the minors have disaffirmed and then put on certain privacy settings so that from that time on, there wouldn't be any sponsored stories? They can certainly adjust their privacy settings. They can't completely opt out of everything. But the point is, they're always able to do two things. They're always able to adjust their privacy settings, and they're always able to quit  They can delete their account if they don't want Facebook. Answer my question. They can't both keep Facebook and stop the ads. They can stop a lot of ads, but they can't stop every permutation of everything that — and, Your Honor, this is the consideration that they're giving Facebook for the use. I understand. But they do have quite a bit of control in the — over what is shown and to whom it is shown and all sorts of things. Your Honors, if there aren't additional questions — Okay. Thank you. Thank you very much. Now, we took you over time. Let's put two minutes on the clock for rebuttal. Thank you, Your Honor. I'll try to be quick. First, let me start with the point that was just raised. We talked about consideration, what the consideration was. We've heard for the minors the consideration was use of the site for Facebook use their name and likenesses in advertisements for third parties. If you look at the Flitner case, which was 30 Calab 209, a minor under the age of 18 years may disaffirm a contract without restoring or offering to restore the consideration. So, in other words, in this particular instance, we were able to disaffirm without voluntarily disabling our use of Facebook. But what about the characterization that we had from Mr. Levin that says disaffirming the contract by a minor cannot have the effect of turning what was an appropriate and correct act under the contract into an incorrect act, a lawful act into an unlawful act? Right. The Morgan case that he talks about is in direct conflict with the Ninth Circuit case that I mentioned based on his characterization of that. I think it has a different characterization in the Morgan case. In the Morgan case, that contract was court approved, and the court found because of 6750 and the, remember, the lead-in to 6710, which says, except as provided by other statute, that the 6750 court approval governed all of that, and since the court approved the contract, actions taken in furtherance of the court-approved contract was okay, too. So Morgan is separate and apart. If you're asking the retroactivity question, the answer is the Ninth Circuit case that I cited to you earlier. There's a factual issue that I want to clear up, though. What was just represented was that Facebook wouldn't have been continuing to use the names and likenesses of the children if they hadn't continued to use the site. That's not the case. If I don't log on to Facebook but I'm still a member, Facebook's going to continue to use my name and likeness until I jump up and down and cancel my account. So the kids didn't have to do anything positively for Facebook to use their name and likeness, and as was just stated, there was nothing they could do short of canceling their account to stop the use. Do you have any of your clients or do you have any proof as to how many of these kids who stay on Facebook actually don't use it? We're on a 12-by-6, Your Honor. There isn't. All right. I mean, my sense of kids is that they tend to use it. So you may be talking about a small percentage who decided that based on the lawsuit they're not going to use it anymore. But I got it. Okay. Thank you, Your Honor. Oh, there's a pending motion to certify questions to the California Supreme Court. We see the motion. Yeah, right. Thank you. Okay. Thank you very much. CMD versus Facebook now submitted for discussion.
judges: Fletcher, Berzon, Bea